UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Herman Donald McKnight, #132919, | ) | C/A No. 5:14-cv-3214-BHH-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | REPORT AND RECOMMENDATION |
| v. | ) | |
| | ) | |
| Warden, Lee Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Herman Donald McKnight ("Petitioner"), a state prisoner, filed this pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and Recommendation on Respondent's Motion for Summary Judgment and Return. ECF Nos. 31, 32. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's Motion. ECF No. 33. Petitioner filed a Response in opposition to Respondent's Motion. ECF No. 39. Respondent did not file a reply to Petitioner's Response. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment be granted.

I.    Procedural History

Petitioner is currently incarcerated in the Lee Correctional Institution, part of the South Carolina Department of Corrections prison system. ECF No. 1. In 2008, Petitioner was indicted in the March term of the Florence County Grand Jury for assault and battery with intent to kill ("ABWIK"), murder, discharging a firearm at or into a dwelling, and possession of a weapon

during the commission of a violent crime. App. 614-16.[1]

A jury trial commenced on June 25, 2008 before the Honorable Thomas A. Russo, in Florence, South Carolina. App. 1-612. Attorney B. Scott Suggs ("trial counsel") represented Petitioner, and Solicitor Edgar L. Clements represented the State. App. 1. At the conclusion of the trial, the jury found, as to the ABWIK charge, that Petitioner was guilty of assault and battery of a high and aggravated nature ("ABHAN"), a lesser-included charge. App. 601. The jury found Petitioner guilty of all other charges as indicted. App. 601-02. Petitioner was sentenced to ten years on the ABHAN charge, ten years on the charge of discharging a firearm into a dwelling, and life imprisonment on the murder charge. App. 612. The charge of possession of a weapon during the commission of a violent crime was subsumed in the murder charge so the court did not sentence Petitioner under that conviction, and all sentences were ordered to run concurrently. App. 612, 617-20.

Trial counsel timely filed and served the Notice of Appeal. ECF No. 32-4. Petitioner served his Final Brief of Appellant on February 9, 2010. ECF No. 32-5. The issue presented on appeal was as follows: "Whether the court erred by refusing to instruct the jury on involuntary manslaughter where there was evidence the decedent grabbed the gun, and that the gun 'went off' when it was grabbed by the decedent, since appellant was entitled to an involuntary manslaughter instruction given this evidence?" *Id.* at 4. The State served its Final Brief of Respondent on February 10, 2010. ECF No. 32-6. On June 17, 2011, the South Carolina Court of Appeals issued an opinion affirming the ruling of the trial court. ECF No. 32-7. The Remittitur was issued on July 7, 2011. ECF No. 32-8. On August 18, 2011, Petitioner filed an Application

---

[1] Citations to "App." refer to the appendix of the record that was before the PCR court. It is on the docket of this case at ECF Nos. 32-1, 32-2, and 32-3.

seeking post-conviction relief ("PCR") arguing (a) ineffective assistance of counsel due to counsel's failure to move to quash the indictment and counsel's failure to prepare an adequate defense because he did not timely receive and review discovery with Petitioner, he made "prejudicial comments" in his opening statement, he failed to provide the court with a mental competence report, he did not secure expert witnesses, and failed to establish Petitioner's legal rights to the residence; and (b) denial of a fair and impartial trial as guaranteed by the Fourteenth Amendment under the cumulative error doctrine and due to the trial judge's alleged unreasonable jury instruction, failure to instruct on involuntary manslaughter, and use of theatrics while delivering the jury instructions. App. 621-32. The State served its Return on November 15, 2011. App. 633-37. On February 1, 2012, an evidentiary hearing was conducted before the Honorable William H. Seals in Florence, South Carolina. App. 638. Petitioner was represented by Attorney Charles T. Brooks, and Attorney David Spencer represented the State. *Id.* Petitioner and his former trial counsel, B. Scott Suggs, testified at the hearing. App. 639-76. On June 4, 2012, the PCR court issued an Order denying Petitioner's grounds for relief and making the following findings of fact and conclusions of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and has heard the testimony presented at the post-conviction relief hearing. This Court has further had the opportunity to observe the witnesses presented at the hearing, closely pass upon their credibility and weigh their testimony accordingly. Set forth below are the relevant findings of facts and conclusions of law as required pursuant to S.C. Code Ann. § 17-27-80 (2003).

## Ineffective Assistance of Counsel

Applicant alleges ineffective assistance of counsel. He alleges his counsel was ineffective because although the Applicant testified on his own behalf at trial, he alleges counsel did not allow him to testify to the truth.

The burden of proof is on the applicant in a PCR proceeding to prove the allegations in his application. Bell v. State, 321 S.C. 238, 467 S.E.2d 926 (1996); Rule 71.1(e), SCRCP.

For an applicant to be granted PCR as a result of ineffective assistance of counsel, he must show both: (1) that his counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) that he was prejudiced by his counsel's ineffective performance. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); Judge v. State, 321 S.C. 554, 471 S.E.2d 146 (1996). In order to prove prejudice, an applicant must show that but for counsel's errors, there is a reasonable probability the result at trial would have been different. Johnson v. State, 325 S.C. 182, 480 S.E.2d 733 (1997). A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial. Id. Where trial counsel articulates a valid reason for employing certain trial strategy, such conduct should not be deemed ineffective assistance of counsel. Roseboro v. State, 317 S.C. 292, 454 S.E.2d 312 (1995); Stokes v. State, 308 S.C. 546, 419 S.E.2d 778 (1992).

Applicant was convicted for shooting his son-in-law at Applicant's daughter's wake, held at the daughter's house, where the victim also resided. The evidence indicated that the tragic events were triggered when Applicant and his friend arrived at the wake and suggested to start drinking. Evidence at trial was that victim did not consider that appropriate and asked Applicant to leave. Applicant was angered and retrieved his rifle from his vehicle. He broke in the kitchen door as one of the witnesses attempted to lock the door and shot victim, who was wheel-chair bound. Applicant claimed that victim grabbed the gun and it then discharged.

Applicant fails to show counsel's performance was deficient. Applicant testified at his own trial, and he has failed to indicate how counsel prevented Applicant from testifying differently. Furthermore, Applicant testified to his version of events at the PCR hearing. They closely track his trial testimony on most points.

Where his testimony before this Court differs from his trial testimony, it tends to be more inculpatory then [sic] helpful. Applicant's PCR testimony makes clearer the animosity he felt towards his victim and the remorse he felt for his daughter's demise. Counsel testified to his understanding of the events surrounding the shooting. Counsel testified that at Applicant's age, even the State's offer of twenty years imprisonment was likely a life sentence. So his advise [sic] was to proceed to trial despite the lack of any true defense to the

4

charges. At trial, counsel sought, unsuccessfully, for an involuntary manslaughter charge. This was the issue raised on appeal and affirmed by the Court of Appeals.

This Court simply does not find any point made by Applicant at his PCR hearing to rise to the level sufficient to establish prejudice under Strickland. In finding Applicant has not met his burden of proving prejudice, this Court notes the overwhelming evidence of guilt. This Court further finds that Applicant's testimony lacks credibility. This Court finds counsel's testimony and gives it great weight. This Court finds that Applicant has failed to meet his burden of proof and denies the application.

App. 679-81.

Petitioner filed a timely notice of appeal. ECF No. 32-10. On February 19, 2013, Attorney Kathrine E. Hudgins of the South Carolina Commission on Indigent Defense submitted a *Johnson* petition for writ of certiorari,[2] presenting the following issue: "Was counsel ineffective in admitting in opening statement in a murder trial that appellant was 'criminally negligent and reckless that night and that caused the death of Stewart Floyd' when involuntary manslaughter was not charged to the jury and appellant testified that the shooting was an accident?" ECF No. 32-11 at 3.  Petitioner filed a a supplemental pro se petition on April 5, 2013, alleging that his trial attorney failed to put four of Petitioner's witnesses on the stand, that Petitioner should have been charged with involuntary manslaughter, and that Petitioner was owner of the house where the shooting occurred. ECF No. 32-32-12 at 2. On July 29, 2013, the South Carolina Supreme Court transferred Petitioner's case to the South Carolina Court of Appeals pursuant to South Carolina Appellate Court Rule 243(1). ECF No. 32-13. The South Carolina Court of Appeals issued an Order on June 24, 2014 denying the petition and granting counsel's request to withdraw. ECF No. 32-14. The Remittitur was issued on July 11, 2014. ECF No. 32-15. Petitioner filed his habeas Petition on August 11, 2014. ECF No. 1.

---

[2] *See Johnson v. State*, 364 S.E.2d 201 (1988) (holding appointed PCR appellate counsel may move to withdraw from representation after certifying a belief that the petition counsel filed is

II.    Discussion

A.    Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus,

quoted verbatim:

> **Ground One**: Ineffective Counsel-(Assistance) Judicial Error-Violation of Due
> Process Anyone or All
> **Supporting Facts**: Failure to call witness (all) for Defendant. Failure to bring to
> court's attention discrepancies by State witness's in statements to Prosser
> (Investigator) as well as court testimony. Failure to present evidence that quite
> possibly have proved Mr. McKnight was owner or part owner of house incident
> occurred at-and he had every right to be there while Mr. Stewart did not.

ECF No. 1 at 8. Petitioner also cites on additional pages attached to the Petition[3] a claim that the

"court erred (Judicial error) by refusing to instruct jury on involuntary manslaughter where there

was evidence decedent grabbed gun causing it to go off." *Id.* at 3. Petitioner did not raise any

other grounds in his habeas Petition but noted that to the "[b]est of [his] knowledge Grounds

Two/Three and four do not apply at this time" and he would rely on an attorney's advice if

needed in the future. *Id.* at 9.

B.    Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is

appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth

specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477

---

without merit).
[3] ECF No. 1 at pages 3, 5, and 7 are copies of statements included originally on the back of pages
2, 4 and 6 of the Petition.

U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

C.      Habeas Corpus Standard of Review

1.      Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Breard v. Pruett*, 134

7

F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

### a.    Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 563 U.S. 170 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 102. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. In *Harrington*, the Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id*.; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

8

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. 362, 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing

evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

### b.    Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id*. at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id*. at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 563 U.S. at 190.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 181. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 182. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id*. at 179. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id*. at 180. The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered

10

additional evidence that had not been available to the state courts. 563 U.S. at 181. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." *Id*. at 182 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id*. (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." 562 U.S. at 101.

### 2.     Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id*. The separate, but related, theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas-corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state

11

courts will be dismissed absent unusual circumstances detailed below.

### a.      Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that –
>
>   (A) the applicant has exhausted the remedies available in the courts of the State; or
>
>   (B)(i) there is an absence of available State corrective process; or
>
>   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state-court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing a PCR application. State law requires that all grounds be stated in the direct appeal or PCR application. SCACR 203; *see* S.C. Code Ann. §§ 17-27-10 through 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR application in South Carolina courts. A PCR application must be filed within one year of judgment, or, if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or to the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

### b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas-corpus relief as to an issue failed to raise

that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984). However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

14

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), *Teague v. Lane*, 489 U.S. 288, 297-98 (1989), *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996), and *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)). Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996). To overcome Respondent's contention, it is Petitioner's burden to raise cause and prejudice or actual innocence. If not raised by Petitioner, the court need not consider the defaulted claim. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1362-63 (4th Cir. 1995).

c.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495-96; *see Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012) ("A prisoner may obtain federal review by showing cause for the default and prejudice from a violation of federal law.") (quoting *Coleman*, 501 U.S. at 750). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate

15

the novelty of a particular claim. *Murray*, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

### 3.     Claims of Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Petitioner bears the burden of proving an error and prejudice in his ineffective-assistance-of-counsel claim. *Id.*

### III.     Analysis

#### A.     Procedurally Barred Claims

In his habeas Petition Petitioner alleges one ground of ineffective assistance of counsel with three subparts and one free-standing claim of judicial error. ECF No. 1 at 6. Petitioner alleges: (a) his trial counsel failed to call defense witnesses; (b) failed to bring to court's attention discrepancies in the State witnesses' statements to the investigator and in their trial testimony; and (c) failed to present evidence that could have proved Petitioner was owner or part owner of house where the shooting occurred. *Id.* Petitioner also alleges judicial error in failing to instruct the jury on involuntary manslaughter. *Id.* at 3.

Respondent contends that the issues contained in Ground One of the Petition are procedurally defaulted because Petitioner did not present the issues to the PCR court and the

PCR court did not rule on this ground. ECF No. 32 at 11. Respondent acknowledges that Petitioner raised the issue of counsel's failure to call witnesses in his pro se response on the PCR appeal, but argues "this ground remains unpreserved for federal habeas review because it was not presented to the lower court at the appropriate time." *Id.* Respondent asserts that the issues regarding counsel's failure to effectively cross-examine certain witnesses and failure to present evidence regarding Petitioner's potential ownership of the home are barred because "those claims were not addressed at any time during state court proceedings . . . ." *Id.* Respondent contends that Petitioner's claim "that the trial court erred in refusing to instruct the jury on the lesser-included charge of voluntary (sic) manslaughter . . . is not cognizable on federal habeas review because it regards a state-law interpretation." *Id.*

In his Response, Petitioner does not address the issue of procedural default and instead lists ten "issues" he alleges demonstrate the ineffectiveness of "trial and or P.C.R. counsel." ECF No. 39. Notably, Petitioner does not list counsel's failure to call witnesses or counsel's ineffectiveness regarding the cross-examination of the State's witnesses as one of the ten issues.

The undersigned has reviewed Petitioner's PCR application, *see* App. 621-32, and the transcript of his PCR hearing, App. 638-76, and notes that Petitioner did not include these Ground One (a) and Ground One (b) in his application nor were they raised at the PCR hearing. Consequently, the undersigned finds that these issues are procedurally defaulted and barred from federal habeas review. *See Plyler v. State*, 424 S.E.2d 477, 478 (S.C. 1992) (holding that an issue that was neither raised at the PCR hearing nor ruled upon by the PCR court is procedurally barred).

17

Petitioner may overcome procedural default and have his claims addressed on the merits by showing either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of a review on the merits. *See Coleman*, 501 U.S. at 750, *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996). The existence of cause ordinarily turns upon a showing of a factor external to the defense which impeded counsel or Petitioner's compliance with the State procedural rule. *Murray*, 477 U.S. at 488. Having reviewed the record evidence and the parties' legal memoranda the undersigned finds that Petitioner has not shown sufficient cause and prejudice to excuse the default of the above-referenced claims. Petitioner had a jury trial where he offered a defense to the charges, including presenting his own testimony before the court. Additionally, Petitioner filed a direct appeal, and had a PCR hearing where he again testified before the PCR judge. Petitioner had numerous opportunities to raise the issues that he is now trying to bring before this court, however, he failed to raise them, raise them properly, or preserve these issues for habeas review. These issues are therefore procedurally barred from consideration by this court and should be dismissed.

In order to demonstrate a miscarriage of justice Petitioner must show that he is actually innocent of the crimes for which he was convicted. *Clagett v. Angelone*, 209 F.3d 370, 379 (4th Cir. 2000) (citing *Coleman*, 501 U.S. at 750)); *see also Weeks v. Angelone*, 176 F.3d 249, 269 (4th Cir. 1999). The claim of actual innocence must be supported "with new reliable evidence," and "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995). Petitioner has not offered any new evidence to suggest that he is actually innocent and therefore these claims are procedurally barred from consideration by this court and should be dismissed.

The Fourth Circuit has stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Accordingly, the undersigned will not discuss the merits of the issues related to counsel's failure to call defense witnesses or failure to address discrepancies in the testimony of the State's witnesses as these claims are procedurally barred.

As to the issue regarding the ineffectiveness of counsel for failure to present evidence related to Petitioner's possible ownership of the home, the undersigned notes that unlike the other allegations in Ground One, Petitioner included this portion of Ground One in his PCR application. App. 630. However, this issue was not presented to the PCR court and was not addressed in the PCR court's Order of Dismissal. In his pro se petition for certiorari Petitioner asserts that he was the owner of the house. ECF No. 32-12. In his response to the Motion for Summary Judgment Petitioner does not address the issue of procedural bar but lists this issue regarding ownership of the house twice:

> 2. Failure to obtain verification that [Petitioner] was in fact the rightful owner of residence (by marriage) where accidental and fatal shooting occurred – after being told by deceased to get out of his own home! 6th and or 14th Amendments. . . .

> 9. Failed to establish, throughout trial, [Petitioner's] legal right to residence (family home) and the threat that was imposed on him of loosing (sic) his home to the Stewart family.

ECF No. 39 at 1, 2. To the extent Petitioner appropriately raised this issue to the PCR court through his PCR application but PCR counsel failed to address the issue, Petitioner may be able to assert ineffectiveness of PCR counsel under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012).

In *Coleman v. Thompson*, the Supreme Court held that ineffective assistance of counsel will constitute cause only if it is an independent constitutional violation. 501 U.S. 722, 755

(1991). In *Martinez*, the Court recognized a narrow exception to the rule established in *Coleman* and held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 132 S. Ct. at 1315.

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*. To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Id.* at 1318 (internal citation omitted).

Therefore, to excuse the procedural default of his claim that trial counsel was ineffective in failing to present evidence regarding his ownership of the house, Petitioner must "show that [PCR] counsel's representation during the post-conviction proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-post-conviction matter." *Sexton v. Cozner,* 679 F.3d 1150, 1157 (9th Cir. 2012); *see also Williams v. Taylor,* 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (stating that "the *Strickland* test provides sufficient guidance for resolving virtually all ineffective assistance-of-assistance-of-counsel claims"); *Strickland v. Washington,* 466 U.S. at 687 (stating to demonstrate ineffective assistance of counsel, a petitioner must show that (1) his counsel was deficient in his representation, *i.e.* that counsel's errors were so serious that his performance was

below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution and (2) he was prejudiced as a result).

Although not clear, Petitioner appears to assert that, as owner of the home where the shooting occurred, he had more of a legal right to be in the house than the Victim. Respondent asserts that this claim is of no effect and the "facts as presented at trial and at PCR do not in any way lend to a castle doctrine defense because the unarmed, wheelchair-bound victim was in no way launching an attack upon Petitioner; Petitioner was the aggressor at a family function where the victim was an invited guest and sometimes resident." ECF No. 32 at 22. The undersigned notes that the issue of ownership of the home came up during the trial. Petitioner's daughter testified that she owned one third of the house and the other two thirds belonged to her two sisters—one of whom had recently died. App. 128-29. The daughter explained that they inherited and became co-owners of the house when their mother, who owned the house, died three years prior. App. 130-31. The witness also testified that the Victim, who was married to but estranged from the sister who had died, occasionally lived in the house. App. 130. She further testified that Petitioner would also, on occasion, stay at the house. App. 134. Later, outside of the presence of the jury, the trial judge questioned the relevance of this line of questioning to the proceedings. In his PCR application Petitioner cited to the following portion of the trial transcript:

> THE COURT: All right. I guess the only question I had, Solicitor, and I'm not, I mean, if you think it's obviously important to your case, what's the relevance? Again, I know there's been a lot of conversation, does it matter who owned that house, who is in it? I mean . . .
>
> MR. CLEMENTS:  Judge, I don't think so at all but who knows what a juror's going to think and what I think they're going to try to do is—
>
> THE COURT: I mean, it obviously would be very relevant if he was also charged with burglary, but he's not charged with that.

21

MR. CLEMENTS:  But this is, this is my fear, Judge, is they're going to blow smoke about he had a right to that house and somebody would think, God, yeah, he had a right to that house. He didn't have a right to that house; he had no legal right to it.

THE COURT: Well, say he did, so what? I mean, he's not charged with burglary. He's charged with murder and assault and battery of a high and aggravated—or burglary and assault with intent to kill and discharging of a firearm and possession of a firearm. None of that has any relevance to the ownership of the house. I'm not trying to say it's not necessary. I'm just, I mean, and if, you know, if the defense wants to stipulate to the deed is what it is, but I – just curious as to why it's an issue.

MR. CLEMENTS:  The reason why it's an issue is if they – if the jury gets confused about, well, [the Victim] didn't have any right, that was [Petitioner's] house and so [Petitioner] had a right to shoot him because [the Victim] was in his house and they had [an] argument.

THE COURT: Okay.

MR. CLEMENTS:  Does that make sense? I mean, a jury can think that. He –

THE COURT: I was going to say that it doesn't make sense to me but then again –

MR. CLEMENTS:  But you know the law.

THE COURT: -- I understand.

MR. SUGGS:  Well, if that worked I think we got a new defense in South Carolina, Judge, and use it quite frequently.

THE COURT: I understand that but –

MR. SUGGS:  Ed I think – Mr. Clements is trying to be careful, cover all his bases, and--

THE COURT: I understand that.

MR. SUGGS:  And I don't think it's going to – it probably won't take much time to hash it out. I have no objection –

THE COURT:  What I was trying to get to is this, is if it's something that can be stipulated to that's fine. If not, and this is fine too, you'll just have to call

22

witnesses to come in and testify to it which will just take longer to do.

    MR. SUGGS:  I would stipulate to it if I knew what the consequences of the stipulation were, and I don't know what they are yet so I want to see what Mr. Clements wants to do with that first and then I'll probably – I might stipulate but I don't know yet 'cause I don't know what he's thinking so.

    MR. CLEMENTS:  The only reason it's an issue to me, Your Honor, at all – and I don't think it's an issue. I don't think –

    THE COURT: Is it to show that the victim was rightfully there?

    MR. CLEMENTS:  To show that the victim was rightfully there. And in response to any defense argument that, you know, well this was his house kind of thing.

    THE COURT:  Well, I mean, that would be irrelevant. What would possibly be relevant is what you said is that –

    MR. CLEMENTS: [The Victim]—

    THE COURT:  --the victim was wrongfully there. And but then again, under these circumstances still doesn't give you the right . . . .[4]

App. 172-75. After the parties rested their case the trial judge considered post-trial motions. Trial counsel asserted that an argument could be made that discharging a firearm into one's own home "may not necessarily be unlawful" because the statute regarding discharging a firearm into a dwelling was silent on the issue of lawfulness as it pertained to ownership of the home. App. 513-14. The court noted counsel's exception for the record. App. 515. In his closing argument trial counsel addressed the issue of home ownership as it related to count three of the indictment:

> But count three, discharging a firearm into a dwelling house. There ain't no question in anybody's mind, shouldn't be, that [Petitioner] fired a gun in this house. Now whether it was his house, whether it was somebody else's house, whether it was part his and part somebody else, you know, I don't really think that makes a lot of difference. I think—obviously I don't think the statute mentions anything like that, but he fired the weapon or shotgun into the house.

---

[4] The court adjourned for the afternoon noting they would reconvene in the morning to discuss the matter in chambers. App. 175-76.

App. 553.

Applying *Martinez* to the record and Petitioner's arguments, the undersigned finds that even if Petitioner tried to assert ineffectiveness of PCR counsel under *Martinez*, he cannot satisfy *Martinez's* limited exception. Petitioner cannot show that his claim is a substantial claim of ineffective assistance of trial counsel under *Strickland* standards, that PCR counsel was objectively unreasonable in failing to raise it, and that, but for PCR counsel's errors, there is a reasonable probability that Petitioner would have received relief on his claim that trial counsel was ineffective. Accordingly, Petitioner has not shown sufficient cause and prejudice under *Martinez* to excuse the procedural default of this final ineffective-assistance-of-counsel claim contained in Ground One of the Petition. Additionally, as noted above, Petitioner has not argued that he is actually innocent of the crimes, such "that failure to consider the claims will result in a fundamental miscarriage of justice." *Clagett v. Angelone*, 209 F.3d at 379; *Weeks v. Angelone*, 176 F.3d at 269. The undersigned therefore recommends that Respondent's Motion for Summary Judgment be granted as to the ineffective-assistance-of-counsel claims in Ground One of the habeas Petition.

### B.    Merits Review

In Ground One Petitioner also asserts "Judicial Error." ECF No. 1 at 8. The Petition contains an argument that the trial court erred in refusing to instruct the jury on involuntary manslaughter. *Id.* at 3. Petitioner "maintain[s] [the] charge should have been involuntary manslaughter by accident." *Id.* Respondent argues that federal habeas relief is "not warranted on the matter of whether the trial court appropriately decided a state-law issue on whether to instruct the jury on involuntary manslaughter in addition to murder." ECF No. 32 at 24.

Under South Carolina law involuntary manslaughter is "(1) the unintentional killing of another without malice, but while engaged in an unlawful act not naturally tending to cause death or great bodily harm; or (2) the unintentional killing of another without malice, while engaged in lawful activity with reckless disregard for the safety of others." *State v. Chatman*, 519 S.E.2d 100 (S.C. 1999).

The evidence presented in this case is that Petitioner shot his son-in-law at the wake of Petitioner's daughter held at the daughter's house. Petitioner and a friend wanted to drink alcohol at the wake, but the Victim did not consider that appropriate behavior and asked them to leave. Petitioner became angry and retrieved his gun from his vehicle, returned to the house, and shot the Victim who was confined to a wheelchair. Petitioner asserts that the Victim grabbed the gun and it discharged accidentally. Trial counsel requested a charge on both voluntary and involuntary manslaughter in addition to a charge on accident. App. 509. The solicitor objected to a charge on involuntary manslaughter. App. 510. The trial judge determined that "the only evidence before the Court is that he did in fact point that shotgun at the victim which that would be a felony . . . involuntary is not appropriate under those circumstances so I will charge voluntary but I will not charge involuntary. And I will charge accident." App. 511.

"[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Because Petitioner was not entitled to a jury charge on involuntary manslaughter as a matter of state law, Petitioner cannot show an error in the trial court's decision. Petitioner was not entitled to an involuntary-manslaughter instruction, and the decision of the trial judge in that regard was not unreasonable. Therefore, this claim should be dismissed.

IV.    Conclusion

The undersigned has considered each of Petitioner's Grounds for habeas-corpus relief and recommends that each be dismissed. It is recommended that Respondent's Motion for Summary Judgment, ECF No. 31, be GRANTED and that the Petition in this case be DISMISSED with prejudice.

IT IS SO RECOMMENDED.


January 20, 2016                              Kaymani D. West
Florence, South Carolina                     United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**